# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WILLIAM PERSICHETTI, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC., <br><br> Defendant. | Case No. <br><br> **COMPLAINT—CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff William Persichetti, individually and on behalf of all others similarly situated, alleges the following against T-Mobile USA, Inc. ("T-Mobile" or "Defendant").

## NATURE OF ACTION

1. This class action challenges T-Mobile's practice of sending unsolicited text message calls for telemarketing purposes without instituting procedures for maintaining a list of persons who request not to receive such text message calls. Plaintiff signed up for T-Mobile's cellular service in December

2018.[1] Since then, he has repeatedly received text message calls—including texts for telemarketing purposes. On multiple occasions, Plaintiff asked T-Mobile to stop sending his family and him text message calls, but T-Mobile has not stopped. In fact, T-Mobile responded that it is unable to stop its "system-generated" text message calls.

2. Plaintiff brings this class action for damages and other equitable and legal remedies resulting from Defendant's violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., and the regulations promulgated thereunder, 47 C.F.R. § 64.1200(d) ("TCPA").

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, because they present a federal question.

4. This Court has personal jurisdiction over T-Mobile because it contracted with Plaintiff in Georgia for cellular telephone services and directed the text message calls at issue in this case to Plaintiff's cellular telephone number in Georgia.

---

[1] Plaintiff opted out of T-Mobile's arbitration procedures for dispute resolution on January 15, 2019.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6. Plaintiff William Persichetti resides in Canton, Georgia.

7. Defendant T-Mobile is a Delaware corporation with headquarters at 12920 SE 38th Street Bellevue, Washington.

## FACTUAL ALLEGATIONS

**A.     T-Mobile Sent Text Message Calls to Plaintiff and Other Consumers for Telemarketing Purposes.**

8. Plaintiff's telephone number, (XXX) XXX-0092, is, and, since December 23, 2018, has been, assigned to T-Mobile's cellular service.

9. Plaintiff's cellular telephone number, (XXX) XXX-0092, has been registered on the national do-not-call registry since October 10, 2012.

10. Immediately after signing up for T-Mobile's cellular service, Plaintiff began receiving text message calls from T-Mobile in December. Plaintiff continued to receive the text message calls in subsequent months.

11. For example, Plaintiff received a message January 9, 2019 at 6:27 p.m. that said "You've got so much more than unlimited data with T-Mobile ONE. Get thanked every Tuesday with free stuff, Netflix On Us and travel perks.

3

Check out all your awesome benefits::[*sic*] t-mo.co/Morebenefits." The hyperlink in this message leads to a page that encourages the purchase of the "T-Mobile ONE" cellular service package.

12. Similarly, Plaintiff has received at least three messages concerning "T-Mobile Tuesdays" on January 9, 2019 at 4:03 p.m., January 29 at 1:48 p.m., and April 30 at 12:27 p.m.

13. The January 9 message said, "Tap into T-Mobile Tuesdays! Score free stuff and great deals every week--just for being a customer. Take a look: t-mo.co/2okUWrZ."

14. The January 29 message said, "T-Mobile Tuesdays gives you free stuff and great deals EVERY WEEK, just for being a customer. Download the app: t-mo.co/2ot1Mh5."

15. The April 30 message said, "Don't forget! Get cool deals and giveaways. Download the T-Mobile Tuesdays app & get thanked every week just for being a customer. Do it now: t-mo.co/TUESDAYS."

16. The purpose of these text message calls is to encourage customers to download the T-Mobile Tuesday application, which T-Mobile uses to sell goods and services.

17.     Once a customer clicks on the link and downloads the T-Mobile Tuesday application, T-Mobile uses the application to deliver promotional messages for T-Mobile products and services.

18.     For instance, on April 23, 2019 T-Mobile messaged users of the T-Mobile Tuesday application with an offer to "Buy a Samsung Galaxy S10e and get one FREE via 24 monthly bill credits when you add a line."

19.     The "T-Mobile Tuesday" application also provides customers with an opportunity to purchase goods and services from companies that have partnered with T-Mobile.

20.     For instance, in April and May of 2019 the T-Mobile Tuesday Application offered movie tickets from Atom Tickets, LLC (www.atomtickets.com) for the price of $4 per ticket.

21.     The T-Mobile Tuesday application also offered a "free" pizza from Chuck E Cheese if the customer spent five dollars in game purchases.

22.     In addition to encouraging customers to purchase goods or services from both T-Mobile and companies that have partnered with T-Mobile, T-Mobile Tuesdays also provides free and discounted promotional offers for the purpose of encouraging its customers to continue purchasing cellular service from T-Mobile.

23. T-Mobile operates as a no-contract, or month-to-month, cellular service provider. Customers can cancel their service at any time without penalty.

24. The content of the text message calls that Plaintiff received from T-Mobile demonstrates that they are sent for the purpose of encouraging the purchase of goods or services. The text message calls are not sent for an emergency purpose.

25. Shortly after receiving the first unwanted text message call from T-Mobile in December, Plaintiff accessed his account preferences to opt out of all alerts and messaging from T-Mobile, but continued to receive text message calls from T-Mobile.

26. In or around late December, Plaintiff called T-Mobile customer service and asked T-Mobile to stop sending the text message calls, but continued to receive text message calls after contacting T-Mobile customer service.

27. On or around January 8, Plaintiff sent an email to T-Mobile's CEO, John Legere, requesting that T-Mobile stop sending him unwanted text message calls.

28. A representative from Mr. Legere's office responded and informed Plaintiff that the text message calls are automated and T-Mobile is unable to stop

them from being sent. The representative, however, promised to take Plaintiff off the list for marketing text message calls.

29. After this exchange with the CEO's representative, Plaintiff continued to receive marketing text message calls from T-Mobile.

30. Plaintiff sent another email to Mr. Legere's office, again requesting that the text message calls stop.

31. The same customer service representative responded by email on January 12 and explained:

> ***System generated text messages*** from T-Mobile are intended to let you know of the benefits that are available to you. As we previously discussed, ***we are unable to stop our system from sending generated texts about your service***. Please know that ***this is common upon activating new service*** and does stop with time. (Emphasis added)

32. Consistent with these statements, Plaintiff still continues to receive T-Mobile text message calls. The text message calls are not limited to texts about his cellular service. He also continues to receive text message calls about promotional offers from T-Mobile.

33. T-Mobile's internal do-not-call policy is insufficient, does not comply with minimum standards, and its business practices are such that it willfully sends telemarketing text messages to persons and telephone numbers that are—or should be—on its do-not-call list.

34. In addition, or in the alternative, T-Mobile's internal do-not-call policy is not actually implemented with respect to a subset of telemarketing text message calls T-Mobile makes to its customers. This subset includes the T-Mobile Tuesday text message calls.

35. T-Mobile has been sued multiple times for calling behavior similar to the behavior described in this complaint.

36. T-Mobile is aware of the TCPA's requirement that it cannot send telemarketing text message calls without instituting procedures for maintaining a list of persons who have requested not to receive such text message calls and procedures for honoring those requests.

37. Each text message call T-Mobile sent to Plaintiff's cellular phone, including those after he asked T-Mobile to stop sending messages, was sent knowingly or willfully.

### B. T-Mobile's Violations of the TCPA Harmed Plaintiff

38. Plaintiff carries his cellular telephone with him at most times so that he can be available to family, friends, and his employer. Each time he receives a text message call from T-Mobile, his cellular phone rings or vibrates.

39. T-Mobile's text message calls invaded Plaintiff's privacy and intruded upon his right to seclusion. The text message calls frustrated and upset

Plaintiff by interrupting his daily life and constitute a continuing nuisance. The text message calls wasted his time by requiring Plaintiff to take measures—such as calling and emailing T-Mobile customer service—to attempt to stop receiving the messages.

40. T-Mobile's text message calls intruded upon and occupied the capacity of Plaintiff's cellular telephone and depleted the battery of Plaintiff's cellular telephone. The text message calls temporarily seized and trespassed upon Plaintiff's use of his cellular telephone, and caused him to divert attention away from other activities to address the calls.

## CLASS ACTION ALLEGATIONS

41. On January 15, 2019, Plaintiff opted out of T-Mobile's arbitration procedures for dispute resolution.

42. Plaintiff brings this lawsuit under Federal Rules of Civil Procedure Rules 23(a), (b)(2), and (b)(3) as a representative of the following class:

> Each person within the United States or its territories who (1) received two or more text message calls within twelve months of each other; (2) from or on behalf of T-Mobile; (3) which text messages were sent for the purpose of encouraging the purchase of property, goods or services.

Plaintiff reserves the right to amend the class definitions following an appropriate period of discovery.

43. Excluded from the Class are T-Mobile, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, and Plaintiff's counsel.

44. Because auto-dialing equipment maintains records of each contact, members of the above-defined Classes can be identified through T-Mobile's records.

## Numerosity

45. At the time of filing, Plaintiff does not know the exact number of Class Members. But public complaints about unwanted T-Mobile text messages and the number of T-Mobile customers indicate that Class Members likely number in the tens of thousands, at least, and are geographically disbursed throughout the country.

46. The alleged size and geographic disbursement of the Class makes joinder of all Class Members impracticable.

## Commonality and Predominance

47. Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Classes include:

a. Whether T-Mobile sent telemarketing text message calls to the cellular telephones of Plaintiff and Class members;

b. Whether T-Mobile's internal do not call compliance mechanisms, if any, comply with 47 C.F.R. § 64.1200(d);

c. Whether T-Mobile's text messages were sent knowingly or willfully;

d. Whether T-Mobile knowingly or willfully violated the regulations prescribed in 47 C.F.R. § 64.1200(d); and

e. Whether T-Mobile should be enjoined from engaging in such conduct in the future.

### Typicality

48. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff, like all Class Members, has been injured by T-Mobile's uniform misconduct of sending telemarketing text message calls to persons without having instituted and actually implemented the minimum standards for maintaining a list of persons who have requested not to receive such messages.

### Adequacy of Representation

49. Plaintiff will fairly and adequately protect the interests of the Class and is committed to the vigorous prosecution of this action. Plaintiff has retained

counsel experienced in class action litigation and matters involving TCPA violations.

### **Superiority**

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of T-Mobile's financial resources, class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. Class-wide damages are essential to induce T-Mobile to comply with Federal law. Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Negligent "Internal Do Not Call" Violations of the Telephone Consumer Protection Act, U.S.C. §§ 227, *et seq***

51. Plaintiff incorporates the above paragraphs by reference.

52. The Telephone Consumer Protection Act required the Federal Communication Commission to initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights and to protect subscribers from receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(1).

53. The Telephone Consumer Protection Act required the Federal Communication Commission to conclude such proceedings by issuing regulations to implement methods and procedures for protecting such privacy rights efficiently, effectively and without the imposition of any additional charge to telephone subscribers. 47 U.S.C. § 227(c)(2).

54. In doing so, the Federal Communications Commission determined that the most efficient, effective, and economic manner to protect such privacy rights was to require all entities engaging in telemarketing, whether or not such calls constitute telephone solicitations, to establish specific procedures and have those procedures in place at the time of initiating any telephone call to residential telephone numbers for telemarketing purposes. 47 C.F.R. § 64.1200(d).

55. In 2003, the FCC extended these same protections to wireless subscribers. 47 C.F.R. § 64.1200(e).

56. Text messages are "calls" for purposes of the TCPA.

57. The Federal Communications Commission's regulations provide:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

58. The procedures required must include the following:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior

14

> express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d).

59. T-Mobile sent two or more telemarketing text message calls within twelve months of each other to Plaintiff and Class members without instituting or implementing procedures that meet the minimum standards of 47 C.F.R. § 64.1200(d).

15

60. T-Mobile did not honor requests to be placed on its do-not-call list and to not receive text message calls from or on behalf of T-Mobile.

61. In the alternative, T-Mobile did not honor requests to be placed on its do-not-call list and to not receive text message calls from or on behalf of T-Mobile with respect to a subset of T-Mobile telemarketing text message calls, such as the messages advertising the T-Mobile Tuesday application.

62. T-Mobile's telemarketing text message calls also did not provide a telephone number or address at which T-Mobile may be contacted.

63. Pursuant to 47 U.S.C. § 227(c)(5)(B), and as a result of the alleged violations of the TCPA, Plaintiff and Class members are entitled to an award of $500.00 in damages for each negligent violation.

64. Plaintiff and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

## SECOND CLAIM FOR RELIEF
**Knowing or Willful "Internal Do Not Call" Violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227,** *et seq*

65. Plaintiff incorporates the above paragraphs by reference

66. T-Mobile knowingly or willfully sent two or more telemarketing text message calls within twelve months of each other to Plaintiff and Class members

16

without instituting or implementing procedures that meet the minimum standards of 47 C.F.R. § 64.1200(d).

67. When it sent these text message calls, T-Mobile was aware of the TCPA's requirement that it cannot send telemarketing text message calls without instituting procedures for maintaining a list of persons who have requested not to receive such text message calls and procedures for honoring such requests.

68. T-Mobile did not honor requests to be placed on its do-not-call list and to not receive text message calls from or on behalf of T-Mobile.

69. In the alternative, T-Mobile did not honor requests to be placed on its do-not-call list and to not receive text message calls from or on behalf of T-Mobile with respect to a subset of T-Mobile telemarketing text message calls, such as the messages advertising the T-Mobile Tuesday application.

70. T-Mobile's telemarketing message calls also did not provide a telephone number or address at which T-Mobile may be contacted.

71. Pursuant to 47 U.S.C. § 227(c)(5)(C), and as a result of the alleged violations of the TCPA, Plaintiff and Class members are entitled to an award of $1,500.00 in damages for each such knowing or willful violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class defined above, respectfully requests that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying the Class defined above and appointing Plaintiff as the Class representative;

B. Award $500 in statutory damages for each and every text message call that T-Mobile sent in violation of 47 U.S.C. § 227(c)(5) of the TCPA;

C. Award $1,500 in statutory damages for each and every text message call that T-Mobile willfully or knowingly sent in violation of 47 U.S.C. § 227(c)(5) of the TCPA;

D. Grant appropriate injunctive and declaratory relief, including, without limitation, an order requiring T-Mobile to implement measures to stop future violations of the TCPA; and

E. Grant such further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the Defendant take affirmative steps to preserve all recordings, data, emails, phone records, dialer records, documents and other tangible things that relate to the allegations herein, Plaintiff, the putative class members, or any non-party associated with any text message, telemarketing campaign, account, sale, or file associated with Plaintiff or the putative class members. These materials are likely relevant to the litigation of Plaintiff's claims. If Defendant is aware of any non-party (e.g., a dialing vendor) that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such non-party also take steps to preserve the materials. This demand should not be construed to narrow the scope of any independent document preservation duties of the Defendant.

Dated: May 28, 2019　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　By:　*/s/ Justin T. Holcombe*
　　　　　　　　　　　　　　　　Justin T. Holcombe
　　　　　　　　　　　　　　　　Georgia Bar No. 552100
　　　　　　　　　　　　　　　　jholcombe@skaarandfeagle.com
　　　　　　　　　　　　　　　　Kris Skaar
　　　　　　　　　　　　　　　　Georgia Bar No. 649610
　　　　　　　　　　　　　　　　kskaar@skaarandfeagle.com

**SKAAR & FEAGLE, LLP**
133 Mirramont Lake Drive
Woodstock, GA 30189
Tel:   (770) 427-5600
Fax:   (404) 601-1855

James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
Cliff R. Dorsen
Georgia Bar No. 149254
cdorsen@skaarandfeagle.com
**SKAAR & FEAGLE, LLP**
2374 Main Street, Suite B
Tucker, GA 30084
Tel:   (404) 373-1970
Fax:   (404) 601-1855

Daniel C. Girard (*pro hac vice* forthcoming)
dgirard@girardsharp.com
Simon S. Grille (*pro hac vice* forthcoming)
sgrille@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: 415-981-4800
Fax: 415-981-4846

*Counsel for Plaintiff and the Proposed Class*