UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM PERSICHETTI, on behalf of himself and all others similarly situated,

        Plaintiff,

  v.

T-MOBILE USA, INC.,

        Defendant.

CIVIL ACTION NO.
1:19-CV-02424-JPB

## **ORDER**

This matter comes before the Court on T-Mobile USA, Inc.'s ("Defendant") Amended Motion to Dismiss [Doc. 23]. This Court finds as follows:

ALLEGED FACTS AND PROCEDURAL HISTORY

In Plaintiff's Complaint, Plaintiff asserts that he became a T-Mobile customer on December 23, 2018. [Doc. 1, p. 3]. Almost immediately thereafter, on January 9, 2019, Defendant allegedly sent Plaintiff, who is on the national do-not-call registry, a text message that said, "You've got so much more than unlimited data with T-Mobile ONE. Get thanked every Tuesday with free stuff, Netflix On Us and travel perks." Id. The text message contained a hyperlink that led to a page that encouraged the purchase of the "T-Mobile ONE" cellular service

package. Id. at 4. In addition to this text, Plaintiff was sent three more texts about "T-Mobile Tuesdays." Id. One text message was sent on January 9, 2019, and it stated "Tap into T-Mobile Tuesdays! Score free stuff and great deals every week – just for being a customer." Id. A text message dated January 29, 2019, read "T-Mobile Tuesdays gives you free stuff and great deals EVERY WEEK, just for being a customer." Id. The final text message, sent on April 30, 2019, said, "Don't forget! Get cool deals and giveaways." Id. The text messages contained a link to an app that could be downloaded. Id.

Plaintiff contends that after he received the first text message, he accessed his account preferences to opt out of all alerts and messaging from T-Mobile. Id. at 6. Plaintiff also contends that he called Defendant's customer service department to ask Defendant to stop sending text messages. Id. Plaintiff additionally asserts that he sent two e-mails to Defendant's CEO, John Legere, requesting that Defendant stop sending him text messages. Id. Despite these efforts, Plaintiff continued to get text messages from Defendant. Id.

Plaintiff claims that he suffered harm as a result of the text messages. More specifically, Plaintiff states that he carried his cellular phone with him at most times, and each time he received a text message, his cellular phone rung or vibrated. Id. at 8. Plaintiff further claims that the text messages "invaded [his]

privacy and intruded upon his right to seclusion," "frustrated and upset [him] by interrupting his daily life" and constituted a "continuing nuisance." Id. at 8-9.  Additionally, Plaintiff contends that the text messages wasted his time because he took measures to stop future texts.  Finally, Plaintiff argues that the text messages "intruded upon and occupied the capacity of [his] cellular telephone and depleted the battery." Id. at 9.

Plaintiff brought suit against Defendant on May 28, 2019, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., and the regulations promulgated thereunder, 47 C.F.R. § 64.1200(d).  Plaintiff's Class Action Complaint asserts two different causes of action:  (1) negligent "internal do not call" violations of the TCPA; and (2) knowing or willful "internal do not call" violations of the TCPA.  Id. at 12, 16.  Defendant moved to dismiss the action on July 22, 2019.  [Doc. 7].  With this Court's permission, Defendant filed an Amended Motion to Dismiss on December 6, 2019.  [Doc. 23].

## ANALYSIS

In Defendant's Amended Motion to Dismiss, Defendant argues that:  (1) Plaintiff lacks standing to pursue his claims; (2) violations of 47 C.F.R. § 64.1200(d) cannot be enforced via a private right of action; and (3) Plaintiff fails to

state a plausible claim in violation of Federal Rule of Civil Procedure 12(b)(6). Each argument is addressed below.

1. <u>Standing</u>

Defendant argues that Plaintiff lacks Article III standing to pursue his claims. "Standing, a limitation on federal subject matter jurisdiction derived from Article III, requires plaintiffs to show they suffered an injury traceable to the defendant's conduct and redressable by a favorable decision." <u>Pinson v. JPMorgan Chase Bank, NA</u>, 942 F.3d 1200, 1206 (11th Cir. 2019). In other words, in order to establish Article III standing and invoke this Court's jurisdiction, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Salcedo v. Hanna</u>, 936 F.3d 1162, 1166 (11th Cir. 2019). Significantly, in a case such as this, it is the plaintiff who bears the burden of establishing federal jurisdiction. <u>Id.</u> at 1167.

In Defendant's Amended Motion to Dismiss, Defendant maintains that <u>Salcedo</u> forecloses Plaintiff's claims on standing grounds. [Doc. 23-1, 4]. In <u>Salcedo</u>, the Eleventh Circuit Court of Appeals addressed whether a plaintiff, who received a single, unsolicited text message in violation of the TCPA, alleged an injury in fact sufficient to support standing. <u>Salcedo</u>, 936 F.3d at 1165. After

considerable analysis including reviewing the TCPA's legislative history, analogous common-law torts, Eleventh Circuit precedent and the constitutional principles underlying the doctrine of standing, the Eleventh Circuit determined that the plaintiff did not show a concrete injury which could support standing.  In reaching this conclusion, the Eleventh Circuit observed that

> [the plaintiff] has not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone.  Nor has he alleged that his cell phone was searched, dispossessed, or seized for any length of time.  [The plaintiff's] allegations of a brief, inconsequential annoyance are categorically distinct from those kinds of real but intangible harms.  The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly [waved] in one's face.  Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts.

Id. at 1172.

The Eleventh Circuit further explained that "[t]here is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be." Id.  In finding that the plaintiff did not have standing, the court determined that the plaintiff only alleged a waste of time generally.[1]  Id. at 1167.  Significantly, the court was careful

---

[1] The plaintiff alleged in his complaint that he "waste[d] his time answering or otherwise addressing the message." Salcedo v. Hanna, 936 F.3d 1162, 1167 (11th Cir. 2019).

5

to note that "allegations of wasted time can state a concrete harm for standing purposes." Id. at 1173.  See Mittenthal v. Fla. Panthers Hockey Club, Ltd., No. 20-60734-CIV-ALTMAN/Hunt, 2020 WL 3977142, at *6 (July 10, 2020) (recognizing that the Salcedo court "was careful to base its decision on [the plaintiff's] failure to allege that his review of the text messages took an inordinate amount of time").  The Eleventh Circuit left unaddressed whether "a plaintiff who alleged that he had received multiple unwanted and unsolicited text messages may have standing to sue under the TCPA." Id. at 1174 (Pryor, J., concurring).

In Plaintiff's Opposition to Defendant's Amended Motion to Dismiss, Plaintiff argues that Salcedo is not controlling.  [Doc. 25, p. 2].  Plaintiff first contends that, unlike the plaintiff in Salcedo, he received multiple text messages.  Plaintiff also contends, that unlike the Salcedo plaintiff who only generally alleged that his time was wasted, Plaintiff specifically detailed the time he wasted, including accessing his account preferences to opt out of messaging, calling customer service and e-mailing the CEO multiple times. Id. at 5-6.

This Court agrees with Plaintiff—Salcedo is not controlling under these facts.  As an initial matter, this Court finds that Plaintiff alleged a tangible harm in his Complaint that is sufficient to support standing.  Specifically, he alleged that he was harmed because the text messages "occupied the capacity of Plaintiff's cellular

6

telephone and depleted the battery of Plaintiff's cellular telephone."[2]  At the motion to dismiss stage, this Court must accept Plaintiff's allegations as true.

Even if battery depletion cannot support standing as stated immediately above, this Court finds that Plaintiff has alleged a concrete intangible harm—wasted time.  First, this Court makes clear that Plaintiff's receipt of multiple text messages, instead of just one, does not automatically result in standing.  Salcedo "did not turn on the fact that the plaintiff received only one text message.  Nor could it have."  Mittenthal, 2020 WL 3977142 at *7.  Had Plaintiff's argument relied only on the number of texts received, Plaintiff would not have standing.

Importantly, Plaintiff argued more than just the number of texts received.  Unlike Salcedo, Plaintiff's Complaint was not silent on the question of "wasted time," nor was it general.  In this case, Plaintiff specifically detailed the actions he took in responding to the text messages and his attempts to stop future text messages.  For instance, he changed the settings on his phone in an attempt to stop the messages.  He also called customer service and e-mailed Defendant's CEO in response to the messages.  See Liotta v. Wolford Boutiques, LLC, No. 1:16-CV-4634, 2017 WL 1178083, at *4 (N.D. Ga. Mar. 30, 2017) (finding that the plaintiff's allegation that she called the defendant to ask to be removed from its

---

[2] Defendant never addressed this allegation in its Amended Motion to Dismiss.

advertising list is an "even more concrete harm than the types of harm found sufficient to confer standing in other TCPA cases").  Cf. Eldridge v. Pet Supermarket Inc., No. 18-22531-CIV-WILLIAMS, 2020 WL 1475094, at *5 (S.D. Fla. Mar. 10, 2020) (finding that the plaintiff did not have standing because the plaintiff failed to allege that he spent any time unsubscribing from the texting campaign, thus implying that if those allegations were made, the plaintiff would have had standing).  Because Plaintiff detailed the specific actions he took after he received the text messages, this Court finds that these allegations are sufficient to show a concrete harm based on wasted time.

For the reasons stated above, this Court finds that Plaintiff's allegations are sufficient to support standing.  To the extent that Defendant seeks dismissal on standing grounds, Defendant's Amended Motion to Dismiss is DENIED.

2. Private Right of Action

Plaintiff's TCPA claims are based on violations of 47 C.F.R. § 64.1200(d), which is the predominate regulation relating to a company's internal do-not-call list.  Cordoba v. DIRETV, LLC, 942 F.3d 1259, 1265 (11th Cir. 2019).  The regulation  provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to

8

receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). These procedures include, but are not limited to, the following: (1) having a written policy relating to maintaining a do-not-call list; (2) training personnel engaged in telemarketing on the existence and use of the do-not-call list; (3) recording and disclosing do-not-call requests; and (4) maintaining do-not-call lists. 47 C.F.R. § 64.1200(d)(1)-(7).

In Defendant's Amended Motion to Dismiss, Defendant argues that the "TCPA does not provide a private right of action to enforce the procedural regulations of 47 C.F.R. § 64.1200(d)." [Doc. 23-1, p. 9]. Defendant asserts that § 64.1200(d) was promulgated pursuant to 27 U.S.C. § 227(d), which does not support a private right of action. § 227(d) is entitled "technical and procedural safeguards." Conversely, Plaintiff argues that § 64.1200(d) was promulgated pursuant to § 227(c), which clearly does provide for a private right of action. § 227(c) is entitled "protection of subscriber privacy rights." Thus, this Court must determine whether § 64.1200(d) was promulgated pursuant to § 227(c) or § 227(d).

The Eleventh Circuit has not addressed this issue head-on. In Cordoba, however, while addressing a violation of § 64.1200(d) in a different context, the court stated that "[t]he TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of [§

64.1200(d)]." Id. Although this indicates that the regulation can be enforced through a private right of action, it does not appear that the issue presented in this case has been brought to the Eleventh Circuit.

Other jurisdictions have directly addressed whether § 64.1200(d) supports a private right of action. "A majority of courts that have addressed the issue (though not all) . . . have held that § 64.1200(d) was promulgated under the authority in § 277(c) and, therefore, contains a private right of action." Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324 (D. Mass. 2020). See Smith v. Truman Rd. Dev., LLC, No. 4:18-cv-00670-NKL, 2020 WL 2044730, at *13 (W.D. Mo. Apr. 28, 2020) (finding that the substance of § 64.1200(d) more directly corresponds to the substance of § 227(c), and therefore can be enforced via a private right of action); Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011) (determining that the plaintiff's allegation of a violation of § 64.1200(d) should have been brought pursuant to § 227(c)(5)); Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017) (holding that the internal do-not-call procedures contained in § 64.1200(d) "fit cleanly under the rubric of" § 277(c)'s "general mandate to adopt adequate do-not-call regulations"); Barrett v. Vivint, Inc., No. 20-60734-CIV-ALTMAN/Hunt, 2020 WL 2558231, at *5-6 (D. Utah May 20, 2020) (finding that the internal do-not-call

registry requirement was promulgated under § 227(c) and incorporates a private right of action); Dobronksi v. Selectquote Ins. Servs., No. 2:19-cv-12798, 2020 WL 2744124, at *4 (E.D. Mich. May 27, 2020) (finding that a private right of action exists for a violation of § 64.1200(d)); Hand v. Beach Entm't KC, LLC, No. 4:18-cv-00668-NKL, 2020 WL 3163672, at *14 (W.D. Mo. Apr. 27, 2020) (rejecting a defendant's argument that § 64.1200(d) did not support a private right of action).  But see Burdge v. Ass'n Health Care Mgmt., Inc., No. 1:10-CV-00100, 2011 WL 379159, at *3 (S.D. Ohio Feb. 2, 2011) (finding that § 64.1200(d)(4), which requires telemarketers to identify themselves, cannot be enforced through a private right of action).

For several reasons, this Court agrees with the majority and thus rejects Defendant's argument that the regulation cannot be enforced through a private right of action.  First, this Court finds that the substance of the regulation more directly corresponds to the substance of § 227(c) rather than § 227(d).  § 227(c) requires the Federal Communication Commission ("FCC") "to initiate rulemaking proceedings to evaluate, among other issues, the potential use of 'industry-based or company specific "do not call" systems.'"  Smith, 2020 WL 2044730, at *13.  § 227(d), on the other hand, "directs the FCC to revise regulations setting technical and procedural standards for telephone facsimile machines and artificial or

prerecorded voice systems and does not address internal, company specific do-not-call procedures." Id.   Second, § 64.1200(d) and § 227(c) are similar in that they are both concerned principally with the protection of individual privacy rights. Rosenberg, 435 F. Supp. 3d at 324.  More specifically, the primary purpose of § 227(c) is to ensure that subscribers "avoid receiving telephone solicitations to which they object." Id.  The do-not-call provisions outlined in § 64.1200(d) furthers that purpose and comports with the statute. Id.  Because this Court finds that § 64.1200(d) was promulgated pursuant to § 227(c), which permits a private right of action, Defendant's Amended Motion to Dismiss is DENIED as to this ground.

    3. Failure to State a Claim

In Defendant's final argument, Defendant contends that Plaintiff failed to state a claim for relief.  In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Importantly, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.

To state a claim under § 227(c)(5) of the TCPA, a plaintiff must allege: "(1) receipt of more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; and (3) in violation of the regulations promulgated by the FCC." Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014).

Plaintiff has stated a claim. As to the first and second element, Plaintiff alleges the receipt of more than one telephone call within any twelve-month period by the same entity. In fact, Plaintiff identifies two text messages sent by Defendant on January 9, 2019, and text messages sent by Defendant on January 29, 2019, and April 30, 2019.

As to the final element,, Plaintiff alleges a violation of 47 C.F.R. § 64.1200(d), which states that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or behalf of that person or entity." The regulation then lists the minimum standards for these procedures which requires telemarketers "to maintain both a do-not-call list and a written policy about the list,

to inform and to train an employee about the use of the list, to honor within a 'reasonable time' a do-not-call request, and to identify both the caller's name and the company on whose behalf he calls." Nece v. Quicken Loans, Inc., No. 8:16-cv-2605-T-23TBM, 2017 WL 2865047, at *2 (M.D. Fla. Jan. 3, 2017).

Here, Plaintiff alleges that after he received the unwanted messages, he called Defendant's customer service department to ask Defendant to stop sending the messages. When that failed, Defendant twice e-mailed Defendant's CEO to stop the unwanted messages. Plaintiff even alleges that Defendant communicated to him that it was "unable to stop" sending him the unwanted text messages.

Although Defendant argues that Plaintiff has not adequately alleged how Defendant failed to follow the procedures relating to the do-not-call list, Plaintiff's facts permit an inference that Defendant failed to honor Plaintiff's do-not-call request within a reasonable time as required by 47 C.F.R. § 64.1200(d). See id. at 2 (finding that a defendant's alleged failure to honor within a reasonable time a request to stop calling supports the inference that the defendant's do-not-call policy fails to comply with § 64.1200(d)). As such, Plaintiff states a claim for relief, and therefore Defendant's Amended Motion to Dismiss as to this ground is DENIED.

CONCLUSION

For the foregoing reasons, Defendant's Amended Motion to Dismiss [Doc. 23] is DENIED. The parties are reminded that this case is assigned to a six-month discovery period, which shall begin thirty days after Defendant answers.

**SO ORDERED** this 16th day of August, 2020.

J. P. BOULEE
United States District Judge